# APPENDIX 4C

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CORY JOHNSON,                                )
                                             )
                Petitioner,                  )    Crim. No. 3:92CR68
v.                                           )
                                             )       Civil No. 3:97CV895
SAMUEL PRUETT, WARDEN,                       )
                                             )
                Respondent.                  )

MOTION FOR LEAVE TO AMEND AND
SECOND AMENDMENT TO INITIAL PETITION FOR WRIT OF
HABEAS CORPUS PURSUANT TO 28 U.S.C. SECTION
2255 AND TO MEMORANDUM IN SUPPORT OF PETITION

Petitioner, Cory Johnson, a federal prisoner now in the custody of the United States, currently held at Sussex I State Prison, Waverly, Virginia, and under sentence of death, hereby moves the Court pursuant to Fed.R.Civ.P. Rule 15(a) for leave to amend his previously filed petition for a writ of habeas corpus pursuant to 28 U.S.C. Section 2255 and memorandum in support thereof.  Petitioner is filing his Reply to the Government's Response to his habeas corpus petitioner on March 15, 1999.  This second amendment presents issues raised in Mr. Johnson's initial Petition and Memorandum and in his Reply.  Hence, there will be no  undue prejudice to the Government by this Second Amendment.

Petitioner asserts the various grounds for granting a writ of habeas corpus both individually and cumulatively.  Because of the cumulative nature of the alleged errors and the prejudice resulting therefrom, Petitioner hereby incorporates by reference his initial

1

petition, memorandum in support, first amendment, and reply in this second amendment, and any subsequent amendment thereto.

I.    Johnson Is Exempt From Execution Under 18 U.S.C.
      Sec.   3596(c) and 21 U.S.C. Sec. 848(1) Based On
      <u>Long Standing, Well Documented Mental Impairments.</u>

Under federal law, a mentally retarded defendant cannot be executed.  21 U.S.C. sec. 848(1); 18 U.S.C. sec. 3596(c)[added 9/13/94].  The Government recognized this prohibition in its Response.  Govt. Response at 229.  However, there is no case law defining the meaning of "mental retardation" under the applicable statutes and the outer boundaries under the law have not been defined.  As set forth in the Initial Memorandum (at 108-111) and in his Reply, Mr. Johnson has exhibited the distinguishing characteristics associated with mental retardation for most of his life.

> Johnson's defense expert explained at his trial that mental retardation is determined by several factors.  One is intelligence:   Individuals that fall in the range of 70-75 can be considered in the range of mental retardation.  And then of course, anything lower than that indicates mental retardation.

J.A. at 4515 (testimony of Dr. Dewey Cornell); <u>DSM-IV</u> (4th ed. 1994) at 39-40 (mental retardation may include those with IQ of 70-75 when coupled with significant deficits in adaptive behavior).

Johnson's I.I.Q. testing history demonstrated the following.  In February 1982 when he was 13 years old, Johnson was given the WISC-R, a test designed to measure a child's I.Q., and achieved a full scale I.Q. score of 88.  The test evaluator described this score as within the low average range of intellectual functioning. (Reply, Ex. 14).  A second WISC-R was given in March 1985, only three years later, when Johnson was 16

2

years old.  <u>This time Johnson achieved a full scale I.Q. of only 69-74, placing him in the mentally retarded range</u> (JA 4433), and was described by the evaluator as "Deficient-Borderline range."  (Reply, Ex. 14).  Shortly prior to Johnson's capital trial, he took the WAIS-R intelligence test, which is the adult version of the WISC-R.  JA. 4505.  He was then 23 years old and in October 1992 achieved a full scale I.Q. score of 77.  (Reply, Ex. 14).  The evaluator, Dr. Dewey Cornell, concluded that Johnson was in the "borderline mentally retarded range."  (JA 4515, 4517:  70-75 I.Q. can be considered in the range of mental retardation).  No explanation was offered for Mr. Johnson's widely differing I.Q. scores.

Where an individual has significant adaptive impairments, the criteria of mental retardation may be met even if the individual has a higher IQ range.  <u>DSM-IV</u> at 45.  The American Association On Mental Deficiency ("AAMD") reports that the upper limit [of 70 as a standard for retardation] is intended as a guideline; it could be extended upward through IQ 75 or more, depending on the intelligence test used."  Ellis & Luckasson, Mentally Retarded Criminal Defendants, 53 Geo. Wash. L. Rev. 414, 422 n. 44 (1985)

The second factor associated with mental retardation is impaired adaptive functioning:

> [Y]ou need to show that the person has impaired adaptive behavior in any two of about ten areas that are listed there.  Certainly functional academics, the ability to do academic work is one in which he has impairment.  Also, communication deficits with his speech impairment and communication problems, he has some deficits there.  Self care, social skills, work, the ability to maintain a job, to have good work habits, to use the kind of common sense you need to hold a job, all of those are possible areas in which his functioning is not at a normal level.

J.A. at 4515-16.  Johnson satisfied this second factor.  For example, a school report from

3

1986 when Johnson was <u>17 years old</u> set forth as one of his goals learning to "handle money so he can shop for himself" and "learn enough simple arithmetic that he will be able to figure out correct change." See Johnson Reply, Ex. 15. Using this second characteristic, Johnson fell within the mentally retarded group.

While not stated by Cornell, the third factor in determining mental retardation is an intelligence test score in the mental retardation range before the age of 18. (<u>DSM-IV</u> at 39). Johnson also satisfied this factor. He had tested in the I.Q. range of 69-74 in 1985 when he was 16 years old. <u>Thus, the only factor that precluded a finding of mental retardation at the time of Johnson's capital trial was the 1992 I.Q. score.</u> Cornell testified:

> The IQ score I got was 77. If he had gotten a 75, he would be within the range that counts as mental retardation. 70 to 75 is kind of the gray area. If you are in that area, you can be mildly retarded. He was two points above that, which is a matter of one or two questions on an intelligence test that would make the difference there.

J.A. 4517. One or two questions could have accounted for the two point difference in I.Q. when Cornell administered the test.

A finding that the third characteristic of mental retardation has been met obviously depends upon the validity of the testing instrument and/or the test administrator. The American Association On Mental Deficiency (now Retardation), the principal professional organization in the field, has placed the upper limit on mental retardation at an IQ of 75 or more, depending on the reliability of the intelligence test. <u>Classification In Mental Retardation 1</u>, (H. Grossman ed. 1983).

As Johnson argued in his Memorandum, research by James Flynn in 1984 and 1988 documented a phenomenon of IQ gains over time that are tied to the age of the testing instrument. Johnson Memo, Ex. 7 at 2. In view of Prof. Flynn's research,

4

Johnson's 1992 I.Q. test cannot be accepted as the final determination of Johnson's status. And there may be additional deficiencies in the testing process as yet unidentified.

Johnson's trial counsel never questioned the validity of the tests conducted on Johnson and, therefore, never argued that Johnson was ineligible for execution under the applicable federal statutes. Given the importance of this issue, an evidentiary hearing is required to examine the issues raised here and to determine whether Johnson is in fact ineligible for execution under federal law.

This additional claim presents an issue raised in Johnson's initial Petition in his related ineffective assistance argument. Respondent is on notice of the substance of the claim here and will not be unfairly prejudiced by this amendment. Therefore, this Court should grant the motion to amend for good cause shown and in the interests of justice.

II.    The Government Violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963),   And    Its Progeny When It Failed To Disclose Exculpatory And <u>Impeachment Materials To Johnson's Counsel.</u>

In addition to the specific <u>Brady</u> violations set forth in the pleadings of Johnson and his co-petitioners, Tipton, and Roane, Johnson alleges additional <u>Brady/Bagley/Kyles</u> violations by the government. Johnson requires discovery and an evidentiary hearing in order to demonstrate the factual basis for these additional claims and to set forth the prejudice to his case. Johnson moves to amend at this time in light of the recent argument before the U.S. Supreme Court in <u>Strickler v. Greene</u>, No. 98-5864 (March 3, 1999), where at least one Justice suggested that a petitioner must raise a <u>Brady</u> claim in post-conviction proceedings even though the factual basis of the claim may not be

immediately available to the petitioner and awaits further discovery.  To avoid a potential default of this claim, Johnson raises it now.

Respondent is on notice of the general substance of this claim  and will not be unfairly prejudiced by this amendment.  Therefore, this Court should grant the motion to amend for good cause shown and in the interests of justice.

Respectfully submitted,

CORY JOHNSON

By:

Barbara L. Hartung
VSB 38062
1001 East Main Street
Suite 504
Richmond, VA  23219
(804) 649-1088

Edward E. Scher
VSB 23064
Thorsen Marchant & Scher, LLP
316 West Broad Street
Richmond, VA  23220-4219
(804) 644-0711

Counsel for Cory Johnson

March 15, 1999

6

CERTIFICATION

I hereby certify that one copy of the Motion To Amend And Second Amendment To Initial Petition For Writ Of Habeas Corpus Pursuant to 28 U.S.C. 2255 And To Memorandum In Support Of Petition was mailed on March 15, 1999, to:

Robert J. Erickson
Deputy Chief, Criminal Division
Appellate Section
U.S. Department of Justice
Room 6102, Patrick Henry Building
601 D Street, N.W.
Washington, D.C.  20530
(202) 514-2841

Counsel for Respondent

Scott L. Nelson
Paul F. Enzinna
Michael J. Barta
Miller, Cassidy, Larroca & Lewin, L.L.P.
2555 M Street, N.W.
Washington, DC  20037
(202) 293-6400

Counsel for James H. Roane, Jr.

Donald R. Lee, Jr.
Frederick R. Gershon
Macaulay, Lee & Powell
1015 East Main Street - 4th
Richmond, VA  23219
(804) 649-2128

Counsel for Richard Tipton

Barbara L. Hartung

7

x:\rcp materials\briefs\2255\amend.o2.wpd

8